ROBERT L. LEACH, Receiver, Appellant, v. MARTIN SORENSEN et al., Appellees.

**FRAUDULENT CONVEYANCES:** Relation of Parties—Evidence. Evidence relative to a conveyance from parents to a son reviewed, and held insufficient to establish the fraudulent nature of the deed.

Headnote 1:   27 C. J. p. 822.

Headnote 1:   12 R. C. L. 488.

*Appeal from Audubon District Court.*—T. C. WHITMORE, Judge.

December 14, 1926.

Action to set aside a conveyance by Martin Sorensen and Dora Sorensen to their son, Norman Sorensen. Decree for defendants. Plaintiff appeals.—*Affirmed.*

*Charles S. White,* for appellant,

*L. Dee Mallonee,* for appellees.

Morling, J.—Only fact questions are presented. On February 26, 1924, Martin Sorensen and Dora Sorensen made a deed to their son, the defendant Norman Sorensen, for 80 acres, subject to a first mortgage of $6,000 and a second mortgage of $2,000, both of which the son agreed to pay. The son at the same time gave to the vendors a note for $2,000, making the total consideration $10,000, or $125 per acre. The next day, the $2,000 note was turned back to the son. The reason or consideration for turning back the note, according to the testimony of defendants, was that Norman claimed wages for work he had done for his parents after attaining his majority, and the note was given back to him in settlement of such claim. The plaintiff bases his case on the theory, in substance, that the giving and surrender of the note were a mere device to furnish a colorable consideration for the deed; that there was no consideration in fact; and that the price claimed to have been paid was inadequate. Plaintiff's standing as a creditor and the insolvency of Martin Sorensen are not disputed. Martin had owned another 80, which he was unable to hold. He found himself unable also to keep the 80 acres in question. Norman knew this fact, but says he did not know of the note held by the plaintiff. Norman became of age in 1916. During a year and a half in 1918 and 1919, he was in the army. On returning from the army, he worked the other 80, which has been spoken of, and which the father acquired while he was away. The plaintiff claims that Norman was working it on shares, and has introduced testimony of statements made by Norman and admitted to have been made to that effect. Norman says, however, that the statements were not true; that he was not working the land on shares; that he did not consider it the business of the person to whom he made

the statement. Martin also testified that Norman did not have the 80 rented. There is testimony to the effect that Norman stayed out on this 80 and made his home there during the growing season, but the defendants' evidence is that Norman was doing general farm work on both places. There is evidence also that Norman sold the produce from the 80, but Martin and Norman testified that the sales were made for the father, accounting being made to him, and that Norman was working for his father, and was not renting the land. Martin claims to have been doing carpenter work, but was unable to tell for whom he worked during these years. There is testimony to the effect that Martin expected to pay and Norman expected to receive pay for his work.

Norman was plaintiff's witness, and much of the evidence on the matters in controversy was given by Norman while on the stand in behalf of plaintiff. If Norman was entitled to wages, the evidence shows that the $2,000 was not an unreasonable amount. The evidence would not warrant us in holding either that Norman was not working for his father from the time he became of age until he gave the deed (except while he was in the army), nor that he was not entitled to wages. Martin testified "that he told Norman that he was afraid he could not hold the 80, because there was too much against it," and that Norman said that he would try it, and so they made the deal. There is no evidence that anything was said about dealing on any other basis than that which has been related. Martin testified that, after the deed was made and note given, Norman said that "he thought it was too much for the farm, and he was afraid he could not hold it, and he said he should have something for all the years that he had been out at home; and so I asked him how much he thought he had coming, and he thought he should have that note back that he gave me in payment of the land, and we agreed to it; and at that time I gave him back the note." Martin owned all of the farming equipment. Martin had a public sale of it, and Norman made purchases at the sale, and gave his notes for his purchases. Evidently Norman had no other property or means. There is no direct evidence of the circumstances of the sale of the 80 and the making of the deed and note and the later surrender of the note except that given by the defendants. There is no direct evidence that the note was not given,

or that the deal was not made as defendants claim. Plaintiff introduced evidence to the effect that the 80 was worth $150 or $160 per acre. There was conflicting evidence on this subject. Plaintiff's witnesses testified to the large amount of "what you might call distressed land." One of plaintiff's witnesses said:

"But then the old gentleman was distributing some of it [land] to his children at that figure on the ground probably that that was about all it would sell for; yet it might be worth more, too."

That Martin was in financial distress, that he disposed of all of his property, that he used the proceeds of his personal property to pay his debts, moved to Omaha, and engaged there in the carpenter trade, is undisputed. That defendants might well have thought that through the deal with Norman they might realize something from the land; that Norman, when faced with the debts that he had contracted, might well repent of his bargain, and might fairly claim wages; and that the note was given back to him in consequence of such repentance, and of a just claim for wages, we think is not unreasonable. While the land might theoretically be worth more than $125 an acre, the evidence is very far from showing that it could have been sold to anyone else for that price.

The relationship of the parties and the insolvency of Martin Sorensen require the court to closely scrutinize the transaction. These facts, however, do not prove fraud. The plaintiff had the burden of proof; and while it was not necessary for him to produce direct and positive evidence of fraud, and he might prove it circumstantially, and while plaintiff would not be bound by the testimony of Norman, as against other evidence showing a different state of facts, still, upon this record, we think that the plaintiff has fallen far short of making out a case of either actual or constructive fraud.

The judgment is—*Affirmed.*

DE GRAFF, C. J., and EVANS and ALBERT, JJ., concur.